Ryan L. McBride, Esq. (SBN 297557)
ryan@kazlg.com
**KAZEROUNI LAW GROUP, APC**
301 E. Bethany Home Road, Suite C-195
Phoenix, AZ 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Aryanna Young, Esq. (SBN 344361)
aryanna@kazlg.com
**KAZEROUNI LAW GROUP, APC**
2221 Camino Del Rio S, Suite 101
San Diego, CA 92018
Telephone: (800) 400-6808
Attorneys for PLAINTIFF

Facsimile:  (800) 520-5523

William Rose, II, Esq. (SBN 190428)
roseconsumerlaw@gmail.com
**WILLIAM ROSE LAW FIRM, PC**
100 Wilshire Boulevard, Suite 700
Santa Monica, CA 90401
Telephone; (310)870-7111 x101
Facsimile: (310)870-7111

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| DANIEL RAY ACOSTA | Case No: |
|---|---|
| PLAINTIFF, | **Complaint For:** |
| | 1. **Breach of Contract** |
| vs. | 2. **Violations Of Consumer Legal Remedies Act, California Civil Code § 1750 et seq;** |
| eLOGHOMES. | 3. **Violations Of Business and Professions Code § 17200 et seq.** |
| DEFENDANT. | 4. **Conversion** |
| | **DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.   Plaintiff DANIEL RAY ACOSTA by his attorneys, brings this action to challenge the actions of Defendant eLOGHOMES with regard to the unlawful retention and conversion by eLOGHOMES of funds to which Plaintiff ACOSTA was entitled under a written contract with eLOGHOMES and pursuant to sales and marketing representations made by eLOGHOMES.

2.   Unless otherwise indicated, the use of any defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that defendant named.

**PARTIES**

3.   Plaintiff DANIEL RAY ACOSTA ("PLAINTIFF") is a natural person who resides in the County of Los Angeles, State of California.

4.   PLAINTIFF is informed and believes, and thereon alleges, that Defendant eLOGHOMES ("DEFENDANT") is a company located in North Carolina and conducting business in the State of California.

**JURISDICTION AND VENUE**

5.   This Court has jurisdiction pursuant to diversity jurisdiction under 28 U.S.C. § 1332(a)).  The amount in controversy is over $75,000. Furthermore, Plaintiff resides

in California while DEFENDANT's principal place of business is in North Carolina. Thus diversity exists.

6.    This action arises out of DEFENDANT'S: (i) breach of a written contract with PLAINTIFF for the construction of a home in South Lake Tahoe, California; (ii) violations of the Consumer Legal Remedies Act, California Civil Code § 1750 et seq; (iii) violations of the Business and Professions Code § 17200 et seq.; and (iv) conversion of funds.

7.         Because DEFENDANT conducts business within the State of California, personal jurisdiction is established.

8.    Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) PLAINTIFF resides in the County of Los Angeles, State of California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) DEFENDANT conducts business within this judicial district.

## FACTUAL ALLEGATIONS

9.    PLAINTIFF, a resident of Los Angeles, sought to hire a construction company to build a second home in South Lake Tahoe, California (the "PROJECT").

10.   PLAINTIFF researched construction companies and selected DEFENDANT because DEFENDANT offered to discount the sales price by Fifty percent (50%).

11.     The building plans for a home in South Lake Tahoe, California are required to address the issue of "Snowload." "Snowload" is the amount of snow that the roof of a structure is expected to bear, expressed in pounds per square foot.

12.     PLAINTIFF submitted building plans to DEFENDANT and, after reviewing them, DEFENDANT told PLAINTIFF that the Snowload issue could be resolved by using larger rafters to construct the garage roof.

13.     DEFENDANT offered PLAINTIFF a price of $222,646.00, discounted by 50% to $111,323.00, which included the cost of using larger rafters to resolve the Snowload issue.

14.     PLAINTIFF agreed to the discounted price and DEFENDANT provided PLAINTIFF with a proposed written contract entitled SALES AGREEMENT  (the "CONTRACT" or "SALES AGREEMENT") A true and correct copy of the CONTRACT is attached as Exhibit "A" and incorporated by reference.

15.     As a further inducement for PLAINTIFF to hire DEFENDANT, the CONTRACT, at paragraph 13, promised PLAINTIFF the right to cancel the CONTRACT and, if the cancellation occurred prior to delivery of materials, PLAINTIFF was to receive a refund of the DEPOSIT reduced only by 7.5% of the sales price ($8,349.22).

16.     PLAINTIFF signed the CONTRACT on April 20, 2023.

17.     DEFENDANT signed the CONTRACT on April 26, 2023.

18.     Also on April 26, 2023, promptly after DEFENDANT signed the CONTRACT, PLAINTIFF wired to DEFENDANT a DEPOSIT of $42,372.32 required by DEFENDANT.

19.     DEFENDANT never intended to construct the PROJECT for the agreed upon "Discounted" sales price of $111, 323.00.

20.     On April 28, 2023, two days after DEFENDANT received PLAINTIFF'S DEPOSIT, DEFENDANT informed PLAINTIFF that the use of larger rafters for the garage roof would not solve the Snowload issue, as DEFENDANT had previously represented. Instead, DEFENDANT informed PLAINTIFF that significant design changes were needed to meet local safety regulations. According to DEFENDANT the required changes in design would increase the sales price for the PROJECT by more than $86,000.00, from $111,323.00 to $197.858.

21.     The DEFENDANT knew or should have known that the use of larger rafters alone would not meet the Snowload requirements at the construction site.

22.     Instead of disclosing this information to PLAINTIFF, DEFENDANT knowingly and intentionally withheld the information in order to keep the sales price low and acceptable to PLAINTIFF.

23.   DEFENDANT'S failure to disclose the essential Snowload safety information in order to keep the sales price artificially low rendered the CONTRACT void and unenforceable.

24.   PLAINTIFF and DEFENDANT entered into negotiations for a new CONTRACT which included the additional cost of the design changes. However, PLAINTIFF declined to accept the price increase of over $86,000 for the redesigned PROJECT.

25.   On or about May 26, 2023, with the CONTRACT no longer in force and no new agreement existing between the PARTIES, PLAINTIFF requested a full refund of his DEPOSIT on the void CONTRACT.

26.   DEFENDANT refused to issue a refund of any amount.

27.   Even assuming, *arguendo*, that the CONTRACT was still in force, PLAINTIFF was entitled to a refund of 92.5% of his DEPOSIT, or $34,023.10, because he cancelled the CONTRACT prior to the delivery of any materials. If the CONTRACT were still in force, DEFENDANT's refusal to issue any refund would have been a breach of the agreement. If the CONTRACT were not in full force and effect, DEFENDANT has effectively converted PLAINTIFF'S DEPOSIT without providing any services in return, unjustly enriching DEFENDANT.

28.     On or about June 22, 2023, PLAINTIFF's attorney sent a letter to DEFENDANT (the "CLRA LETTER") notifying DEFENDANT that it had violated the *California Consumer Legal Remedies Act,* California Civil Code § 1750 et seq, by promising PLAINTIFF a refund of 92.5 % of his DEPOSIT if PLAINTIFF cancelled the CONTRACT before the delivery of any materials; but, instead, when PLAINTIFF did timely cancel the CONTRACT,  wrongfully choosing to keep PLAINTIFF's entire DEPOSIT rather than refunding any amount. A true and correct copy of this CLRA LETTER is attached as Exhibit "B' and incorporated by reference.

29.     The CLRA LETTER requested that DEFENDANT cure  its violations by refunding PLAINTIFF's deposit in full within 30 days.

30.     To date, DEFENDANT has not issued a refund of any amount to PLAINTIFF, but rather has retained PLAINTIFF's entire DEPOSIT.

31.     Had PLAINTIFF been refunded the money, PLAINTIFF could have kept the money in an interest-bearing account, earing interest on the refunded amount for PLAINTIFF.  Instead, Defendant is earning interest on the money that should have been refunded.

32.     PLAINTIFF has suffered severe emotional and mental distress as a result of DEFENDANT'S actions and inactions.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CAUSES OF ACTION
### COUNT I
### BREACH OF CONTRACT

33.     PLAINTIFF re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

34.     PLAINTIFF performed all of his obligations under the CONTRACT.

35.     DEFENDANT knowingly and intentionally concealed from PLAINTIFF the essential fact that the PROJECT, as designed, would not support the South Lake Tahoe winter Snowload; and,  that a redesign of the PROJECT, necessary for safety reasons, would cost PLAINTIFF an additional $86,535.00 over and above the agreed upon sales price.  Thus, the CONTRACT was unconscionable and should be voided.

36.     Even if the CONTRACT were not void, DEFENDANT  breached the terms of the CONTRACT by refusing to refund any of PLAINTIFF's DEPOSIT when PLAINTIFF cancelled the CONTRACT before any materials had been delivered.

37.     By keeping PLAINTIFF's deposit and refusing to refund any amount, DEFENDANT caused PLAINTIFF damages in an amount subject to proof at trial.

### COUNT II

## VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
## CAL CIV. CODE §§ ET. SEQ.

38.    PLAINTIFF re-alleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

39.    The Consumers Legal Remedies Act, California Civil Code Section 1750, *et seq.,* (hereinafter "CLRA"),  sets forth a list of "unfair or deceptive" practices in a "transaction" relating to the sale of "goods" or "services" to a "consumer." The Legislature's intent in promulgating the CLRA is expressed in Civil Code Section 1760, which provides, *inter alia*, that its terms are to be:

> Construed liberally and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.

40.    The CONTRACT was for the sale of "services" by DEFENDANT as defined by California Civil Code Section 1761(b).

41.    The CONTRACT was also for the sale of "goods" by DEFENDANT as defined by California Civil Code Section 1761(a).

42.    PLAINTIFF is a "consumer" as defined pursuant to Civil Code Section 1761(d).

43.    The sale of "goods" and "services" to PLAINTIFF by DEFENDANT constitutes a "transaction" as defined pursuant to Civil Code Section 1761(e).

44.    Civil Code §§ 1770(a) (5) and (9) provide that:

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

(5) Representing that goods or services have…. Characteristics…uses [or]... benefits…that they do not have….

(9) Advertising goods or services with intent not to sell them as advertised.

45.    DEFENDANT violated the CLRA at Civil Code Section 1770 (5) and (9) when:

    a.   DEFENDANT falsely  represented that larger rafters would support the Snowload on the garage roof, when they would not provide this benefit.

    b.   DEFENDANT falsely represented that PLAINTIFF would enjoy the benefit of a refund if he cancelled the CONTRACT prior to the delivery of materials, when no such benefit would be provided;

    c.   DEFENDANT had no intention of solving the Snowload problem at the quoted price simply by using larger rafters; and,

    d.   DEFENDANT had no intention of refunding any amount of PLAINTIFF's DEPOSIT if PLAINTIFF cancelled

the CONTRACT prior to the delivery of materials.

46.    On or about June 22, 2023, PLAINTIFF sent a notice letter to DEFENDANT pursuant to the Cal Civil Code § 1782(a) giving DEFENDANT 30-days to remedy its failure to provide a refund of PLAINTIFF's deposit. DEFENDANT refused to refund the deposit.

47.    On information and belief, DEFENDANT's violations of the CLRA, as set forth herein, were done with awareness of the fact that the conduct alleged was wrongful and was motivated solely by DEFENDANT's self-interest, monetary gain, and increased profit. PLAINTIFF further alleges that DEFENDANT committed these acts knowing the harm that would result to PLAINTIFF and DEFENDANT engaged in such unfair and deceptive conduct notwithstanding such knowledge.

48.    PLAINTIFF suffered an "injury in fact" because DEFENDANT intentionally took and wrongfully retained PLAINTIFF's money.

49.    As a direct and proximate result of DEFENDANT's violations of the CLRA, PLAINTIFF is entitled to a declaration that DEFENDANT violated the Consumer Legal Remedies Act.

50.    As of the filing of this Complaint, DEFENDANT has not complied with PLAINTIFF's demand letter pursuant to California Civil Code § 1782, which was mailed via certified mail to DEFENDANT on or about June 22, 2023.

51.    PLAINTIFF is also entitled to, and seeks, injunctive relief prohibiting such conduct in the future; money damages, restitution, punitive damages, attorney's fees and costs.

## COUNT III
### FOR VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
### CAL BUS. & PROF, CODE §§ 17200 ET. SEQ.

52.    PLAINTIFF realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

53.    PLAINTIFF and DEFENDANT are each "person(s)" as that term is defined by Cal. Bus. & Prof. C. § 17201.  Cal. Bus & Prof. C. § 17204 authorizes a private right of action on both an individual and representative basis.

54.    Cal. Bus. & Prof. C. § 17204, a provision of the Unfair Competition Law (B & P C §§ 17200–17209), confers standing to prosecute actions for relief not only on the public officials named therein, but on private individuals, i.e., "any person acting for the interests of itself, its members or the general public." Thus, a private PLAINTIFF who has suffered a financial injury may sue to obtain relief for others.

55. "Unfair competition" is defined by Bus. & Prof. Code § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

56. An "injunction" is "the primary form of relief available under the UCL to protect consumers from unfair business practices." *In re Tobacco II Cases*, 46 Cal.4th 298, 319 (2009); *see also*, *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 789 (2010) ("[i]f a party has standing under" the UCL, "it may seek injunctive relief").

## A. *"Unlawful" Prong*

57. DEFENDANT'S actions, inactions and misrepresentations set forth herein constitute unlawful business practices.

58. The practices by DEFENDANT described herein constitute negligence and conversion.

59. DEFENDANT violated Cal. Bus. & Prof. Code §§17200, *et. seq.* through unfair, unlawful, and deceptive business practices. As a result of DEFENDANT's violations, California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*, provides a cause of action for an "unlawful" business acts or practices

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

perpetrated on consumers. Specifically, DEFENDANT converted PLAINTIFF'S MONEY, and violated the CLRA, and/or breached a contract with PLAINTIFF.

60.     DEFENDANT had other reasonably available alternatives to further its legitimate business interests, other than the conduct described herein.

61.     PLAINTIFF suffered actual monetary financial injury in that DEFENDANT stole and converted PLAINTIFF's DEPOSIT.

62.     PLAINTIFF reserves the right to allege further conduct that constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

63.     PLAINTIFF seeks public injunctive relief to benefit the general public directly by bringing an end to DEFENDANT's unlawful business practices which threaten future injury to the general public.

## B. *"Unfair" Prong*

64.     DEFENDANT's actions, inactions, and representations constitute an "unfair" business act or practice under § 17200 in that DEFENDANT's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

65.     Without limitation, the business practices describe herein are "unfair" and shock the conscience because they offend established public policy, violate

California statutory protections, and are objectively immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that DEFENDANT's conduct caused PLAINTIFF to suffer financial damage due to the theft and conversion of PLAINTIFF's DEPOSIT.

66.    DEFENDANT could and should have furthered its legitimate business interests by refunding DEFENDANT's DEPOSIT as it was obligated to do under its CONTRACT with PLAINTIFF.

67.    PLAINTIFF could not have reasonably avoided the injury he suffered.

68.    PLAINTIFF reserves the right to allege further conduct that constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date, and is a source of considerable revenue to DEFENDANT.

69.    PLAINTIFF seeks an injunction requiring DEFENDANT to immediately return the money to PLAINTIFF that was wrongfully retained, taken and converted by DEFENDANT.

## COUNT IV
### CONVERSION

70.    PLAINTIFF realleges and incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71.    PLAINTIFF had the right to a full refund of his DEPOSIT of $42,372.32 when DEFENDANT voided the CONTRACT by increasing the purchase price by over $86,000.

72.    In the alternative, DEFENDANT was entitled to a refund of 92.5% of his DEPOSIT because he cancelled the CONTRACT prior to the delivery of materials.

73.    DEFENDANT prevented  PLAINTIFF  from taking possession of his refund by wrongfully, knowingly and intentionally refusing to refund any amount of PLAINTIFF's DEPOSIT.

74.    PLAINTIFF never consented to DEFENDANT's retention of his DEPOSIT.

75.    PLAINTIFF was harmed by DEFENDANT's refusal to refund his DEPOSIT

76.    DEFENDANT's knowing, wrongful and intentionally refusal to refund PLAINTIFF's DEPOSIT was a substantial factor in causing PLAINTIFF's harm

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays that judgment be entered against DEFENDANT for:

### FIRST CAUSE OF ACTION FOR
### BREACH OF CONTRACT

- Compensatory damages, nominal damages, and punitive damages.

### SECOND CAUSE OF ACTION FOR
### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

CAL. BUS. & PROF. CODE §§ 1750, *ET SEQ.*

- Actual damages, injunctive relief, restitution, and punitive damages pursuant to Cal. Civ. Code § 1780(a); and

- an award of costs and attorney's fees pursuant to Cal. Civ. Code § 1780(d).

### THIRD CAUSE OF ACTION FOR
### VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
### CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

- Restitution and injunctive relief pursuant to Bus. & Prof. Code § 17203; and

- Recovery of reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5.

### FOURTH CAUSE OF ACTION FOR
### CONVERSION

- Actual damages, injunctive relief, restitution, and punitive damages.

### TRIAL BY JURY

77.   Pursuant to the seventh amendment to the Constitution of the United States of America, PLAINTIFF is entitled to, and demands a trial by jury.

Date: November 13, 2023          /s/Ryan L. McBride
                                 Ryan L. McBride, Esq.
                                 Attorney for PLAINTIFF

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL